**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| UNITED TAX GROUP, LLC, | : |
| | : |
| Debtor. | : Case No. 14-10486 (LSS) |
| | : |
| | : |
| SWZ Financial II, LLC and | : |
| Tax Help MD, Inc., | : |
| | : |
| Appellants, | : |
| | : |
| v. | : C.A. No. 18-0093 (LPS) |
| | : |
| George L. Miller, Chapter 7 Trustee, | : |
| | : |
| Appellee. | : |

## BRIEF OF APPELLEE GEORGE L. MILLER, CHAPTER 7 TRUSTEE

Dated: February 16, 2018
      Wilmington, Delaware

CIARDI CIARDI & ASTIN
Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
1204 N. King Street
Wilmington, Delaware 19801
(302) 658-1100 telephone
(302) 658-1300 facsimile
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA 19103
Phone: (215) 557-3550
Fax: (215) 557-3551
aciardi@ciardilaw.com

*Attorneys for George L. Miller,*
*  Chapter 7 Trustee*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………………………...ii

SUMMARY OF NATURE/STATE OF PROCEEDINGS………………………………………..1

COUNTER-STATEMENT OF THE FACTS…………………………………………………..1

SUMMARY OF ARGUMENT……………………………………………………………………6

ARGUMENT……………………………………………………………………………………...6

CONCLUSION…………………………………………………………………………………..15

## <u>TABLE OF AUTHORITIES</u>

**Supreme Court Cases**

*Anderson v. City of Bessemer City, N.C.*,
470 U.S. 563 (1985) …………………………………………………………...13

*Barton v. Barbour*,
104 U.S. 126 (1881) …………………………………………………………...6

**Circuit Court Cases**

*Allard v. Weitzman (In re DeLorean Motor Co.)*,
991 F.2d 1236 (6th Cir. 1993) ………………………………………………7

*Leonard v. Vrooman*,
383 F.2d 556 (9th Cir. 1967) ……………………………………………… 12

*In re Linton*,
136 F.3d 544 (7th Cir. 1998) …………………………………………………6

*Teton Millwork Sales v. Schlossberg*,
311 Fed. Appx. 145 (10th Cir. 2009) …………………………………………12

*In re VistaCare Grp., LLC*,
678 F.3d 218 (3d Cir. 2012) …………………………………………7, 8, 9, 10

**District Court Cases**

*Benta v. Christie's, Inc.*,
No. 2013-0080, 2017 U.S. Dist. LEXIS 38697 (D.V.I. Mar. 17, 2017) ……………  6, 10

*Lunan v. Jones (In re Lunan)*,
489 B.R. 711 (Bankr. E.D. Tenn. 2012) …………………………………………6, 7

**Bankruptcy Court Cases**

*Baron v. Sherman (In re Ondova Ltd. Co.)*,
Nos. 0934784-SGJ-7 (Chapter 7), 14-03121-SGJ, 3:16-CV-00947-M,
2017 Bankr. LEXIS 325 at *33-34 (Bankr. N.D. Tex. Feb. 1, 2017) ……………………10

*In re Day*,
Nos. 08-18384 (MS), 13-1959, 2014 Bankr. LEXIS 605 (Bankr. D.N.J. Feb. 7, 2014)….6

*Kaliner v. Antonoplos (In re DMW Marine LLC)*,
509 B.R. 497 (Bankr. E.D. Pa. 2014) …………………………………………..10, 11

**State Court Cases**

*Hills v. Parker*,
      111 Mass. 508 (1873) ………………………………………………………………11

## SUMMARY OF NATURE/STAGE OF PROCEEDINGS

This is an appeal by SWZ Financial II, LLC ("SWZ") and Tax Help MD, Inc. ("Tax Help") (the "Moving Parties") from the United States Bankruptcy Court's January 16, 2018 Order (the "Order") denying SWZ and Tax Help's motion to allow them to file a complaint against George L. Miller, chapter 7 trustee (the "Trustee") for the estate of United Tax Group, LLC and his counsel, Ciardi Ciardi & Astin (the "Barton Motion"). The Order refers to a December 28, 2017 bench ruling by the Bankruptcy Court which contained the Court's findings of fact and conclusions of law with respect to the Barton Motion.

## COUNTER-STATEMENT OF THE FACTS

On March 5, 2014 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to chapter 7 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

Also on March 5, 2014, the Trustee was appointed as interim trustee of the Debtor's estate. The Trustee continues to serve as trustee in the above-captioned case pursuant to 11 U.S.C. § 702(d).

Prior to the Petition Date, the Debtor was engaged in the business of providing tax services to consumers.

On June 25, 2015, the Trustee initiated an adversary proceeding incident to the above-captioned main case against SWZ, Tax Help and certain other defendants (Adv. No. 15-50880 (LSS)) (the "SWZ Adversary"). Through the SWZ Adversary, the Trustee seeks a range of relief stemming from transfers made on account of a pre-petition loan made by SWZ to the Debtor and SWZ's subsequent foreclosure on substantially all of the Debtor's assets. In the SWZ Adversary, the Trustee has averred that SWZ is an "insider" of the Debtor (as that term is defined in section 101(31) of the Bankruptcy Code; SWZ and the Debtor share common ownership linked to Richard

Sabella ("Sabella"), a principal of Allerand (the Debtor's managing member), a principal of SWZ and one of the defendants in the SWZ Adversary Proceeding.

On March 3, 2016, the Trustee initiated an adversary proceeding incident to the above-captioned main case against Edward C. Welke ("Welke") and other, unnamed defendants (John Does 1 – 100) (Adv. No. 16-50088 (LSS)) (the "Welke Adversary"). Through the Welke Adversary, the Trustee initially sought to recover the value of more than $800,000 in transfers made for Welke's benefit.

On March 30, 2016, SWZ filed an initial motion seeking permission to bring suit against the Trustee under Florida law for alleged conversion and interference with business relationships [SWZ Adv. D.I. 20] (the "First Barton Motion").

On April 13, 2016, the Bankruptcy Court held a hearing on SWZ's motion to stay discovery in the SWZ Adversary. In denying the motion to stay, the Court also heard from the parties regarding the First Barton Motion and determined that the First Barton Motion should be tabled pending completion of mediation in the SWZ Adversary:

> [THE COURT:] I'm going to put that motion [the Barton Motion] on hold, okay? And I think that should be included as part of the mediation to wrap everything up. I would really like every issue that is in front of the Court, could be in front of the Court to be resolved, assuming again I don't dismiss the case. But I am not going to schedule the Barton motion, but I do tend to agree that it needs to be filed in the main case. So, but again, that's going to be on hold, and once we get past the motion to dismiss, that could resolve it, or maybe it won't, I don't know. But certainly if we get to mediation I would expect that to be a topic of the mediation.

Tr. 4/13/16 18:14-24.

The Bankruptcy Court's ruling as it pertained to the Barton Motion was incorporated into a form of order that was entered with SWZ and Tax Help's consent [SWZ Adv. D.I. 44]. In relevant part, this Court's order provided:

> Defendants SWZ Financial II, LLC and Tax Help MD Inc. are granted leave to

2

> withdraw their "Barton" Motion [Adv. Pro. Dkt. No. 20], currently filed solely in the adversary proceeding, and refile said Motion in the main case, effectuating service as required by law. If refiled and served, no responsive pleadings will be required of the Chapter 7 Trustee and no hearing will be scheduled on the Barton Motion until completion of mediation and further leave of this Court

Mediation concluded without a resolution. On May 26, 2017, SWZ, Tax Help and Welke filed the Barton Motion, seeking permission to sue the Trustee and his bankruptcy counsel, Ciardi Ciardi & Astin ("Ciardi"). Through the Barton Motion, SWZ, Tax Help and Welke sought leave of this Court to bring (i) claims of conversion and tortious interference with business relationships against the Trustee and (ii) malicious prosecution and civil conspiracy against both the Trustee and Ciardi. The Moving Parties' appeal is limited to the Order's denial of permission to bring claims of conversion and tortious interference with business relationships against the Trustee; the Moving Parties do not appeal from the Order as it relates to the malicious prosecution and civil conspiracy claims against the Trustee and Ciardi.

The Trustee and Ciardi objected to the Barton Motion. An evidentiary hearing on the Barton Motion was held on December 20, 2018, at which two witnesses testified: Sabella and the Trustee.

The claims of conversion and tortious interference with business relationships center upon the handling of certain mail addressed to the Debtor. As was his standard practice in corporate chapter 7 cases, the Trustee sent a change-of-address form to the United States Postal Service requesting that mail addressed to the Debtor at the Debtor's address be redirected to him. Tr. 12/28/18 16:4-9.

SWZ foreclosed on the debtor's assets four months before the bankruptcy filing in November 2013. Tr. 12/28/18 16:22-23. SWZ claims that the foreclosure settlement transferred to SWZ ownership of file materials, including mail, related to the debtor's open client accounts.

3

Tr. 12/28/18 16:23 – 17:1. The foreclosure settlement did not transfer file materials, including mail, for clients that had been fully serviced by United Tax. Tr. 12/28/18 17:1-3. SWZ could have, but did not, at any time after the foreclosure settlement, redirect the Debtor's mail to a different address. Tr. 12/28/18 17:4-5. Since the foreclosure settlement, the United States Post Office had been delivering the Debtor's mail to SWZ's offices. Tr. 12/28/18 17:6-7. That is the first floor of the building in which the Debtor also had its offices. Tr. 12/28/18 17:7-9. Mr. Sabella's personal assistant, working as an SWZ employee, would separate the Debtor's mail from SWZ's mail. Tr. 12/28/18 17:10-11. Either daily or several times a week from the date of the foreclosure through the date of the Trustee's visit, Tax Help, the company servicing the foreclosed accounts for SWZ, sorted the Debtor's mail and took the mail that related to ongoing clients' accounts that it was servicing. Tr. 12/28/18 17:12-16. Once mail that Tax Help (the servicer which SWZ employed post-transfer) did not take became voluminous enough, it was placed in the Debtor's offices on the second floor. Tr. 12/28/18 17:17-19.

The Trustee went to Florida to visit the Debtor's 11 offices on March 14, 2014, shortly after the case was filed. Tr. 12/28/18 16:10-11. The Debtor's offices were on the second floor of a two-story building and were locked. Tr. 12/28/18 16:12-13. The Trustee recognized the landlord's name, Allerand, on a mailbox, and went to those offices, which were on the first floor of the same building. Tr. 12/28/18 16:14-16. The Debtor did not rent any offices on the first floor. Tr. 12/28/18 16:16-17. The Trustee eventually met Sabella, who walked him through the vacant debtor's offices. Tr. 12/28/18 16:18-19. During the Trustee's March 14 visit, Sabella explained the mail routine to the Trustee. Tr. 12/28/18 17:20-21. In response, the Trustee communicated to Sabella that the mail was his. Tr. 12/28/18 17:21-22. Also during the course of the meeting, the Trustee answered Sabella's questions. Sabella contends the Trustee's answers to his questions

4

were intended to communicate that the Trustee was going to be tough and difficult if they did not cooperate with him.  Tr. 12/28/18 17:22 – 18:8.  The Trustee disagrees with Sabella's characterization of his answers to Sabella's questions.

At the conclusion of the March 14 visit, the Trustee told Sabella that he wanted the debtor's accumulated mail in SWZ's possession sent to him. Tr. 12/28/18 18:9-11.  The Trustee did not take any mail with him when he left the premises that day.  Tr. 12/28/18 18:11-12.  After the March 14th visit, SWZ had multiple telephone calls to determine what to do with respect to the mail.  Tr. 12/28/18 18:12-16.  Ultimately, Gary Zentner, another principal of SWZ, made the decision that SWZ would comply with the Trustee's demands.  Accordingly, SWZ sent the mail to the Trustee. 12/28/18 18:17-20.

On March 25, 2014, Sabella e-mailed the Trustee, stating that SWZ had received Debtor mail with notations on the envelope that it could not be forwarded.  Tr. 12/28/18 18:21-23.  Sabella offered to send the mail to the Trustee, and also suggested that the Trustee contact the post office in respect of further deliveries and forwarding of the mail. 12/28/18 18:23 – 19:1.  The Trustee thereafter sent the post office three additional change-of-address forms.  Tr. 12/28/18 19:1-3.

Some two years later, the Trustee was notified that Sabella had in his possession certain Debtor records.  The Trustee picked up 161 boxes of the Debtor's records with SWZ's consent. Tr. 12/28/18 19:4-5.[1]

The Court issued a bench ruling on December 28, 2017.  In its bench ruling, the Court concluded that:  (i) first, the United States Court of Appeals for the Third Circuit has not expressly recognized the ultra vires exception to the Barton Doctrine (Tr. 12/28/18 5:8-18); (ii) second, the ultra vires exception to the Barton Doctrine is limited to the seizure of property in the possession

---

[1] During the intervening four years to date, SWZ has not requested that the Bankruptcy Court intervene and turn over any Debtor records to SWZ.

of another party by force (Tr. 12/28/18 14:12-15); (iii) third, that none of the three ways in which the Trustee came into possession of the Debtor's mail (by redirection via the post office, by picking up same at SWZ's invitation, or by SWZ voluntarily sending the Trustee the mail) constituted a seizure of the mail by force that would fall within the ultra vires exception to the Barton Doctrine (Tr. 12/28/18 19:9 – 20:25).

## SUMMARY OF ARGUMENT

The Bankruptcy Court properly determined:  first, that, under applicable Third Circuit law, the *ultra vires* exception to the Barton Doctrine is not expressly recognized; second, even if the ultra vires exception was expressly recognized by the Third Circuit, the exception does not apply here, where the Moving Parties voluntarily turned property in their possession (the Mail) over to the Trustee.

## ARGUMENT

"The Barton Doctrine requires a party-in-interest to seek stay relief in order to sue a bankruptcy trustee in another forum."  *In re Day*, Nos. 08-18384 (MS), 13-1959, 2014 Bankr. LEXIS 605 at *77 (Bankr. D.N.J. Feb. 7, 2014) (citing *Barton v. Barbour*, 104 U.S. 126 (1881)). The Barton Doctrine has been applied to bankruptcy trustees (i) as a requirement implied in 28 U.S.C. § 959(a), (ii) per federal common law emanating from the *Barton* decision, and (iii) because the bankruptcy trustee "'is a statutory successor to an equity receiver.'"  *See In re Day*, 2014 Bankr. Lexis 605 at *77-78 (quoting *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998).  The protection afforded by the Barton Doctrine extends to the bankruptcy trustee's authorized professionals, given that they act at the direction of the Trustee for the purpose of administering the estate and/or protecting its assets.  *See Benta v. Christie's, Inc.*, No. 2013-0080, 2017 U.S. Dist. LEXIS 38697 at *20-22 (D.V.I. Mar. 17, 2017); s*ee also Lunan v. Jones (In re Lunan)*, 489 B.R. 711, 724 (Bankr.

E.D. Tenn. 2012) (citing *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993)).

Courts have recognized two narrow exceptions to the Barton Doctrine's application. The first exception is the "business" exception, codified in 28 U.S.C. § 959(a); the Barton Doctrine does not protect trustees who operate a debtor's business. *See In re VistaCare Grp., LLC*, 678 F.3d 218, 227-28 (3d Cir. 2012) (discussing history of 28 U.S.C. § 959(a)). Appellants concede that the business exception is not at issue on appeal; the Trustee has never operated the debtor's business and, accordingly, has never requested authority from this Court to do so.

In *VistaCare*, the bankruptcy estate included a property subdivided into 45 lots. 44 of the lots were subdivided and zoned for mobile homes. *See VistaCare*, 678 F.3d at 222. The 45th lot contained a four-story retirement and assisted-living facility. *See id.* The lots were subject to a subdivision plan, approved by the relevant township and properly recorded, containing a restriction which prohibited sale of the lots to the residents of same and, conversely, required that the developer, its heirs and assigns retain fee title. *See id.*

The chapter 7 trustee in *VistaCare* initially filed a motion with the bankruptcy court to sell the property as one or two (Lots 1-44 and, separately, Lot 45) parcels. *See VistaCare*, 678 F.3d at 222. Any sale would be contingent upon the township lifting the transfer restriction. *See id.* After auction, an entity ("Buyer") entered into an agreement of sale with respect to Lot 45, which was approved by the bankruptcy court. *See id.* The sale order provided (with the Township's consent) that the subdivision plan's transfer restriction did not restrict the conveyance of Lot 45. *See id.* at 223. The sale of Lot 45 to Buyer subsequently closed. *See id.*

In the course of liquidating the remaining 44 lots, the chapter 7 trustee discovered that a number of their residents had permanently affixed their mobile homes to the land. *See VistaCare*,

678 F.3d at 223. The chapter 7 trustee initiated lawsuits (adversary proceedings) in bankruptcy court. *See id.* A number of the adversary proceedings were resolved by sale of the lots to the residents, notwithstanding the transfer restriction contained in the subdivision plan. *See id.* The chapter 7 trustee and the township entered into an agreement abrogating the transfer restriction as to the lots. *See id.* Buyer was not party to the agreements abrogating the transfer restrictions. *See id.* For each of those sales to the residents, the Trustee filed a "report of sale" with the bankruptcy court. *See id.*

Buyer subsequently filed a motion with the bankruptcy court seeking permission to bring a civil action against the chapter 7 trustee in state court, arguing that the sales of the lots was unlawful and that the sales damaged its interest in Lot 45. *See VistaCare*, 678 F.3d at 223. The Buyer also argued that the chapter 7 trustee's agreement with the township abrogating the transfer restriction deprived it of notice and due process. *See id.*

The bankruptcy court determined that the Barton Doctrine was "antiquated and probably not controlling in the Third Circuit." *See VistaCare*, 678 F.3d at 223. Notwithstanding that determination, the bankruptcy court proceeded to determine whether Buyer's request for leave should be granted. *See id.* The bankruptcy court concluded that, while it could not predict whether Buyer would succeed in prosecuting its claims, the claims were not facially frivolous and the state court was a more appropriate forum for resolving same because it probably had more expertise with such claims. *See id.*

On appeal, the United States District Court for the Middle District of Pennsylvania affirmed. *See VistaCare*, 678 F.3d at 223. The district court declined to address the chapter 7 trustee's argument that the *Barton* Doctrine did not apply, as the court did, in fact, analyze whether

Buyer should be granted leave.  *See id.*  The district court concluded that the bankruptcy court's decision to grant Buyer leave was proper.  *See id.*

On further appeal, the Third Circuit initially determined that the Barton Doctrine continues to have vitality.  Specifically, the Third Circuit cited 28 U.S.C. § 959(a), which was initially promulgated six (6) years after the Barton decision was rendered, as evidence that Congress did not intend to eliminate the Barton Doctrine entirely.  *See VistaCare*, 678 F.3d at 227 ("Congress's creation of what appears to be a statutory exception to a common law rule strongly suggests its acknowledgement and acceptance of the general rule").  The Third Circuit pointed to the fact that section 959(a) survived the enactment of, and subsequent revisions to, the Bankruptcy Code as further evidence that the Barton Doctrine remains valid.  *See id.*

Buyer's other arguments on appeal were rejected.  The Third Circuit rejected Buyer's contention that the manner in which a chapter 7 trustee was appointed (by the United States Department of Justice, as opposed to the bankruptcy court) varied from pre-Code practice meant that the Barton Doctrine was no longer valid.  *See VistaCare*, 678 F.3d at 229.  The Third Circuit also concluded that the mere existence of section 362 of the Bankruptcy Code (creating an automatic stay upon the grant of bankruptcy relief which protects the bankrupt estate and its assets) did not eliminate the Barton Doctrine.  *See id.* at 230.  Finally, the Third Circuit determined that the mere existence of Bankruptcy Code section 323(b), which provides that the trustee has the ability to "sue and be sued," addresses the trustee's standing and did not alter the applicability of the Barton Doctrine.  *See id.* at 231-32.

The Bankruptcy Court correctly recognized that, in *VistaCare*, the United States Court of Appeals for the Third Circuit expressly recognized only the "business" exception to the Barton Doctrine:

> Important to me in addressing the United Tax matter is that the Third Circuit expressly and explicitly recognizes only one exception to the Barton Doctrine; namely, the 959 exception. In Vista Care, the Third Circuit does not specifically discuss an ultra vires exception, and it certainly does not in any way define the contours of such an exception. I am not the only judge who has recognized this. Judge Eric Frank has recognized this in his recent decision in In re DMW Marine, LLC, 509 Bankruptcy Reporter 497, Bankruptcy Eastern District PA, 2014, which I will quote from shortly.

Tr. 12/28/18 5:8-18.

A second exception to the *Barton* Doctrine, recognized by some courts, is the "ultra vires" exception; the *Barton* Doctrine does not protect trustees who act outside the scope of their official duties. *See Benta*, 2017 U.S. Dist. LEXIS 38697 at \*23 (D.V.I. Mar. 17, 2017). The scope of the exception has been essentially limited by the courts to the seizure of property which is found not to be property of the estate. *See Baron v. Sherman (In re Ondova Ltd. Co.)*, Nos. 0934784-SGJ-7 (Chapter 7), 14-03121-SGJ, 3:16-CV-00947-M, 2017 Bankr. LEXIS 325 at \*33-34 (Bankr. N.D. Tex. Feb. 1, 2017). Courts recognize a presumption that the trustee and his authorized professionals are acting within the scope of their official duties. *See In re Day*, 2014 Bankr. LEXIS 605 at \*81.

The Bankruptcy Court discussed each and every case cited by the Moving Parties regarding the scope of the ultra vires exception to the Barton Doctrine. On appeal, the Moving Parties attempt to argue that "wrongful possession" of the mail falls within the scope of the ultra vires exception to the Barton Doctrine as a matter of law.

Initially, the Bankruptcy Court properly held that the ultra vires exception to the Barton Doctrine (to the extent there is one) has, over time, been limited to instances where the trustee wrongfully seizes non-estate property. *See Kaliner v. Antonoplos (In re DMW Marine LLC)*, 509 B.R. 497, 507 (Bankr. E.D. Pa. 2014). There are two basic reasons supporting the narrow construction of the ultra vires exception. First, there is a common law interest in protecting trustees

10

from personal liability for their official actions. *See id*. Second, regardless of whether awards against trustees are ultimately satisfied from the trustee's personal assets or from estate assets, such actions may affect administration of the estate, a result at odds with the bankruptcy court's control of its own proceedings. *See id*.

Second, the cases cited by the Moving Parties do not support their reading of the ultra vires exception. The Moving Parties' argument that "wrongful possession," standing alone, falls within the ultra vires exception to the Barton Doctrine rests on two cases – *Hills v. Parker*, 111 Mass. 508 (1873) and *Leonard v. Vrooman*, 383 F.2d 556 (9th Cir. 1967).

*Hills* – an 1873 Massachusetts case – involved a locomotive engine which its owner gave to a railroad administrator – not the railroad itself -- to use on the railroad. *See Hills*, 111 Mass. at 508-09. The railroad was put in an equitable receivership, the railroad administrator was approved as a receivership employee, and the engine was used for approximately two months in connection with railroad operations until it needed repairs. *See id*. The engine was sold to a new owner while it was in the repair shop. *See id*. The *Hills* court quickly concluded that the railroad never had a claim to title of the engine and, more specifically, the engine was never part of the decree appointing the receivers of the railroad – that is, the receivers were not permitted to take possession of the engine in the first instance. *See Hills*, 111 Mass. at 510-11. Accordingly, the court permitted the new owner of the engine permission to sue the receivers without leave of court. *See id*.

The facts in *Hills* are far afield from those involved in the instant case. Specifically, the property at issue here is mail addressed to the Debtor which, prior to pre-petition transfer(s) of the Debtor's client files to SWZ, was undisputedly the Debtor's property. The Trustee believes that title to the property remains in *bona fide* dispute after the Debtor's client files were transferred. The engine at issue in *Hills* was admittedly never property of the railroad. Regardless, SWZ

voluntarily gave the Trustee possession of the mail and did not raise any issues with respect to the Trustee's possession of same until approximately two years after the Debtor's bankruptcy was filed, after they had been sued by the Trustee. In *Hills*, the new owner did not consent to the receivers' possession of the engine and immediately acted on that position.

The second case – *Leonard v. Vrooman* – is easily distinguishable as well. As the Bankruptcy Court noted (notwithstanding the protest of the Moving Parties), *Leonard* involved a breaking and entering upon real property which was not listed as an asset of the estate(s) on the bankruptcy schedules. *See id*. at 560. Again, SWZ voluntarily gave the Trustee possession of the mail, Sabella requested that the Trustee file corrected mail forwarding requests to the United States Postal Service to have the Debtor receive the mail, and there are no factual findings here supporting a conclusion that the Trustee seized anything.

Finally, the Moving Parties cite *Teton Millwork Sales v. Schlossberg*, 311 Fed. Appx. 145 (10th Cir. 2009), an unpublished decision without precedential value, in support of their misplaced argument that the Trustee "seized" the Debtor's mail. The Moving Parties' analysis of *Teton Millwork Sales* does not touch upon the key points. The receiver in *Teton Millwork Sales* was charged with collecting the husband's assets incident to a divorce proceeding. The husband had a 25% interest in a corporation. The receiver redirected the corporation's mail (again, separate and distinct from the husband's mail) without vetting the issue of veil-piercing with a court of competent jurisdiction prior to doing so. In contrast, the Trustee is charged with oversight of the Debtor's – not a principal of the Debtor's – estate, and he has testified (and the Bankruptcy Court has found) that the Trustee's routine practice in corporate chapter 7 cases is to have mail addressed to the bankruptcy estate re-directed to him. Tr. 12/28/18 5:4-9. That redirection is consistent with his duties as a chapter 7 trustee (Tr. 12/28/18 19:17-20). Further, the Bankruptcy Court found that

12

SWZ ratified/consented to the Trustee's redirection of the mail.  Tr. 12/28/18 19:20-23.

At bottom, the Moving Parties do not challenge the Bankruptcy Court's factual findings that, regardless of ownership of the mail, SWZ had, in fact, voluntarily consented to the turnover of the mail to the Trustee.  The Bankruptcy Court's findings of fact are reviewed for clear error. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 563, 573-74 (1985).  Given that the findings of fact below were based upon determinations related to the credibility of witnesses, this Court is obligated to give even greater deference to the Bankruptcy Court's factual determinations, as only the Bankruptcy Court was positioned to make credibility determinations.  *See id.*  If the Bankruptcy Court's account of the evidence is plausible in light of the record viewed in its entirety, this Court may not reverse even though it would have weighed the evidence differently had it been sitting as the finder of fact.  *See id.*

Here, the Moving Parties duck pointing to any error in the Bankruptcy Court's findings because they raised the "mail" issue strategically.  SWZ turned the mail over to the Trustee voluntarily and then, approximately two years later, and only after the Trustee filed the SWZ Adversary, cried "foul:"

> I conclude, based on these findings, that while there were various ways in which Mr. Miller came into possession of the mail, none of these ways were by a seizure. Mr. Miller came into possession of the debtor's mail through a change-of-address form. The mail was addressed to the debtor at a lease that was in existence on the date of the filing of the petition, as shown on Schedule G. That lease did not expire until December 31, 2014.  Further, Mr. Miller testified that submitting a change-of-address form to the postal service was part of his expected duties as a trustee and part of an audit checklist for chapter 7 trustees. Further, SWZ clearly consented to the change of address by virtue of their March 25, 2014 e-mail. Consented to go forward, and I guess I'll add ratified, as to previous.

> Mr. Miller also came into possession of mail in 2016 when he was invited to pick up the 161 boxes of the debtor's files. This is not a seizure either.

> Finally, Mr. Miller came into possession of mail because Mr. Sabella directed his assistants to box the mail and send it to Mr. Miller. Mr. Sabella was

> acting as SWZ in that regard. SWZ had time between Mr. Miller's visit to consider whether to comply with Mr. Miller's demands, and Mr. Zentner made a business decision that SWZ was better off complying with the demand than not. SWZ also determined not to raise the issue with the Court.
>
> Mr. Sabella argues that he felt compelled to comply with Mr. Miller's request and/or that Mr. Miller's statements were meant to intimidate him. My observation of Mr. Sabella on the stand, both at the hearing on this motion and previously, is that Mr. Sabella is not easily intimidated.  And he did not testify that he was actually intimidated.  Rather, I believe that SWZ did exactly what Mr. Sabella testified it did. It considered its options and made a calculated determination that it was better to comply with Mr. Miller's demands in the hopes of avoiding litigation.  When the litigation ensued, SWZ decided then to raise the mail issue in response. This conduct does not amount to a seizure, much less a forcible seizure. Mr. Miller did not lockdown SWZ's offices or even the debtor's offices. And he did not take any mail out the door with him, except with the consent of SWZ.

Tr. 12/28/17 19:5 – 20:25.  Accordingly, the Moving Parties' legal argument that wrongful possession of the mail falls within the ultra vires exception to the Barton Doctrine is wholly unsupported by the record before this Court; the Bankruptcy Court determined that SWZ consented to the Trustee's possession of the mail.

## <u>CONCLUSION</u>

WHEREFORE the Trustee respectfully requests that this Court enter an order affirming the Order.

Dated:  February 16, 2018                CIARDI CIARDI & ASTIN
            Wilmington, Delaware

                                         */s/ Joseph J. McMahon, Jr.*
                                         Daniel K. Astin (No. 4068)
                                         John D. McLaughlin, Jr. (No. 4123)
                                         Joseph J. McMahon, Jr. (No. 4819)
                                         919 N. Market St., Suite 700
                                         Wilmington, DE 19801
                                         Tel: (302) 658-1100
                                         Fax: (302) 658-1300
                                         jmcmahon@ciardilaw.com

                                                 -and-

                                         Albert A. Ciardi, III, Esq.
                                         One Commerce Square, Suite 3500
                                         2005 Market Street
                                         Philadelphia, PA 19103
                                         Phone: (215) 557-3550
                                         Fax: (215) 557-3551
                                         aciardi@ciardilaw.com

                                         *Attorneys for George L. Miller,*
                                         *  Chapter 7 Trustee*

## <u>CERTIFICATE OF SERVICE</u>

       I, Joseph J. McMahon, Jr., hereby certify that on the 16th day of February, 2018, I caused a copy of the **Appellee's Brief** to be served on the person(s) listed below via electronic mail and first class United States mail.

John Legare Williams, Esquire
Brian C. Crawford, Esquire
The Williams Law Firm, P.A.
1201 N. Orange Street, Suite 600
P.O. Box 511
Wilmington, DE  19899-0511
john@trustwilliams.com
brian@trustwilliams.com

Office of the United States Trustee
Attention:  Mark S. Kenney, Esq.
844 N. King Street, Suite 2207, Lockbox 35
Wilmington, DE  19801
mark.kenney@usdoj.gov

                                                 */s/ Joseph J. McMahon, Jr.*
                                                 Joseph J. McMahon, Jr. (No. 4819)