IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: UNITED TAX GROUP, LLC, | : | Chapter 7 |
| Debtors. | : | Bankr. Case No. 14-10486-LSS |
| SWZ FINANCIAL II, LLC, and TAX HELP MD, INC., | : | |
| Appellants, | : | Civ. No. 18-93-LPS |
| v. | : | |
| GEORGE L. MILLER, Chapter 7 Trustee, | : | |
| Appellee. | : | |

### **MEMORANDUM**

Pending before the Court is an appeal (D.I. 1) by appellants SWZ Financial II, LLC ("SWZ") and Tax Help MD, Inc. ("Tax Help") ("Appellants") from the Bankruptcy Court's December 28, 2017 bench ruling and subsequent order (B.D.I. 162, 172)[1] ("Order") denying Appellants' motion for leave to commence state court proceedings (B.D.I. 118, 119) ("*Barton* Motion") against George L. Miller, as Chapter 7 Trustee ("Trustee") for the estate of United Tax Group, LLC ("Debtor"), and his counsel. On January 16, 2018, Appellants filed an emergency motion seeking expedited consideration of the appeal (D.I. 4) ("Emergency Motion") on the basis that the statute of limitations to bring the action under Florida law will expire on March 13, 2018. On January 25, 2018, the Court granted the Emergency Motion and set an expedited briefing schedule. (D.I. 8) The merits of the appeal are fully briefed. (D.I. 9, 10, 11) The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. For the reasons that follow, the Court will affirm the Order.

---

[1] The docket of the Chapter 7 case, captioned *In re United Tax Group, LLC*, Case No. 14-10486 (LSS) (Bankr. D. Del.), is cited herein at "B.D.I. ___."

I.  BACKGROUND

The following facts appear to be undisputed.  Prior to the bankruptcy, United Tax Group, LLC ("United Tax") was a tax resolution company, and SWZ was its secured creditor.  (D.I. 9 at 3) When United Tax defaulted on its loan, SWZ initiated an action in Florida state court, and the parties reached a settlement in lieu of foreclosure, pursuant to which Debtor transferred open taxpayer accounts to SWZ as well as the mail necessary to service such taxpayer accounts.  (*Id.* at 4)  SWZ contracted with Tax Help to service the open taxpayer accounts transferred from United Tax.  (*Id.*)  SWZ could have, at any time thereafter, redirected United Tax's mail to a new address, but it did not.  On March 5, 2014, United Tax filed its chapter 7 petition, and the Trustee was appointed.  On March 14, 2014, the Trustee entered the Debtor's former offices in Florida and ordered SWZ to turn over mail addressed to the Debtor, which included mail that SWZ and Tax Help needed to service the open accounts.  (*Id.*)  The Trustee also caused mail in the Debtor's name to be forwarded to the Trustee's office.  (*Id.*)  The Trustee filed an adversary proceeding against Appellants, asserting voidable preference, fraudulent transfers, and fiduciary duty claims.  (*Id.* at 6)

Appellants seek to file claims of conversion and tortious interference with business relationships based on the Trustee's taking of the taxpayer mail.  Appellants assert that the mail was not an asset of the estate and was of no value to the estate.  (*Id.* at 5)  The mail was instead property of SWZ.  (*Id.* at 3-4)  Appellants allege that the Trustee made misrepresentations of his legal authority to take the mail, as well as veiled financial threats against SWZ.  (*Id.*)  According to Appellants, the Trustee took the mail with the specific intent of harming SWZ and not for the benefit of the estate.  (*Id.* at 5)  Appellants claim the Trustee had no intent of acting on the taxpayer accounts, did not open most of the mail, and did not return the mail after being contacted and informed of SWZ's ownership and need.  (*Id.*)  Appellants allege that the Trustee's actions interfered with Appellants' ability to service the transferred taxpayer accounts, resulting in injury to SWZ and to the taxpayer customers.  (*Id.*)

On May 26, 2017, Appellants filed the *Barton* Motion, seeking permission to sue the Trustee and his bankruptcy counsel, Ciardi Ciardi & Astin ("Ciardi"), including for claims of conversion and tortious interference with business relationships against the Trustee. (D.I. 10 at 3) The *Barton* doctrine is traced to the Supreme Court's decision *Barton v. Barbour*, 104 U.S. 126, 128-29 (1881), and it "requires a party-in-interest to seek stay relief from the bankruptcy court in order to sue a bankruptcy trustee in another forum." *In re Day*, 2014 WL 636797, *22 (Bankr. D.N.J. Feb. 7, 2014). "It is for the appointing court, in its discretion, to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere." *In re VistaCare Group, LLC*, 678 F.3d 218, 225 (3d Cir. 2012) (internal quotations and citation omitted). "Because a judgment against the trustee, whether ultimately satisfied out of the assets of the estate or out of the trustee's pockets, may affect the administration of the estate, the requirement of uniform application of bankruptcy law dictates that all legal proceedings that affect the administration of the bankruptcy estate be either brought in the bankruptcy court or with the permission of the bankruptcy court." *Id.* at 228 (internal quotations and citation omitted).

Certain courts have recognized two exceptions to the *Barton* doctrine – that is, situations in which leave of the appointing court is not necessary – the "business exception" and the "*ultra vires* exception." The "business exception" is codified in 28 U.S.C. § 959(a) and provides, in relevant part, that "Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." As the Trustee has never operated the Debtor's business, the parties agree that the business exception is not at issue. (*See* D.I. 9 at 2; D.I. 10 at 7) At issue in this case is the *ultra vires* exception. A classic example of the *ultra vires* exception is an action against a receiver who seizes or otherwise attempts to administer property that is not receivership property, but that actually belongs to a third party. *See In re DMW Marine, LLC*, 509 B.R. 497, 506 (Bankr. E.D. Pa. 2014) (citations omitted).

3

Appellants' *Barton* Motion sought leave under *Barton* to file a state court action and did not address the *ultra vires* exception. (*See* B.D.I. 118 & 119) In their reply, Appellants argued that the exception should apply because "at least one circuit has applied the *ultra vires* exception to a receiver taking mail that did not belong to the estate." (B.D.I. 125 at 2 (citing *Teton Millwork Sales v. Schlossberg*, 311 Fed. App'x 145, 148 (10th Cir. 2009)) The receiver in *Teton Millwork Sales* was charged with collecting the husband's assets incident to a divorce proceeding. *See* 311 Fed. App'x at 147. The husband had a 25% interest in a corporation. *Id.* The receiver redirected the corporation's mail and seized other assets without vetting the issue of veil-piercing with a court of competent jurisdiction. *Id.* The Tenth Circuit found that the receiver's actions fell squarely within the *ultra vires* exception to the *Barton* doctrine. *Id.* at 148. Appellants argued that the facts alleged here were like *Teton Mill*, "where similarly a receiver took possession of property that did not belong to the estate." (B.D.I. 125 at 3) "Therefore, the Trustee's actions were *ultra vires*, and Movants should be granted leave to pursue their claims in Florida." (*Id.*)

The Trustee and Ciardi objected to the *Barton* Motion. (B.D.I. 124) The Bankruptcy Court held an evidentiary hearing on December 20, 2018, at which two witnesses testified: Richard Sabella, a principal of SWZ, and the Trustee. The Trustee testified that, in accordance with his standard practice in corporate chapter 7 cases, he sent a change-of-address form to the United States Postal Service requesting that mail addressed to the Debtor at the Debtor's address be redirected to him. (12/28/17 Hr'g Tr. at 16:4-9) Mr. Sabella testified that while at the Debtor's offices, the Trustee stated that the mail was his, and that SWZ would regret that it had foreclosed pre-bankruptcy rather than under the auspices of the bankruptcy court. (*Id.* at 17:20-25) Mr. Sabella testified that he believed this and other antagonistic statements were intended to intimidate him into complying with the Trustee's demands. (*Id*. at 17:22-18:8)

The Bankruptcy Court issued a bench ruling on December 28, 2017. (*See* B.D.I. 162) At the outset of the ruling, the Bankruptcy Court reviewed a recent Third Circuit case, *VistaCare*,

which applied the *Barton* doctrine to trustees in bankruptcy (*id.* at 3:25-5:18); the *Barton* decision itself (*id.* at 5:19-8:11); and leading cases construing the *ultra vires* exception (*id.* at 8:12-14:10). The Bankruptcy Court then carefully reviewed its findings of fact, based on witness testimony, regarding the events that led to the Trustee's possession of the Debtor's mail. (*See id.* at 15:14-20:25) The Bankruptcy Court held that: (i) the Third Circuit has not expressly recognized the *ultra vires* exception to the *Barton* doctrine (*id*. at 5:8-18); (ii) to the extent the Third Circuit would recognize such an exception, it would be limited to "seizures of property from a third party, and by that I mean taking by force" (*id*. at 14:12-15); and (iii) none of the three ways in which the Trustee came into possession of the Debtor's mail (by redirection via the post office, by picking up same at SWZ's invitation, or by SWZ voluntarily sending the Trustee the mail) constituted a seizure of the mail by force that would fall within the *ultra vires* exception to the *Barton* doctrine (*id*. at 19:9-20:25).

## II. PARTIES' CONTENTIONS

Appellants appeal only that "portion of the Bankruptcy Court's Order that the Trustee's action with respect to the taking, forwarding, and retaining of the mail, rightful property of SWZ[,] does not fall within the *ultra vires* exception to the *Barton* doctrine." (D.I. 9 at 9)[2] Appellants

---

[2] Having determined that the *ultra vires* exception to the *Barton* doctrine did not apply, and that Appellants were required to seek leave from the Bankruptcy Court to file a state court action, the Bankruptcy Court denied leave based on its determination that:

> The factual bases of the claims for conversion, interference with business relationships, malicious prosecution, and civil conspiracy have all been raised in multiple filings and context[s] in these bankruptcy cases. They include the motion for summary judgment in the SWZ adversary, the motion to dismiss in the Welke adversary, the motion to dismiss the entire bankruptcy case, the motion to remove the trustee, and in discovery. The movants have chosen to raise these facts in this Court and seek relief based on these facts. It makes no sense and would be inefficient to put these matters before two courts, and there would also be a risk of inconsistent decisions, and so I will deny the motion.

(12/28/17 Hr'g. Tr. at 24:1-13) Appellants do not appeal this ruling or argue it was an abuse of

5

argue the *ultra vires* exception is not limited to cases of seizure or forcible taking, but rather encompasses cases where a receiver mistakenly or wrongfully takes or maintains possession of non-estate property. (*Id.*) According to Appellants, "[n]o other court has gone as far as to expressly require forcible taking in order to apply the *ultra vires* exception to the *Barton* doctrine." (*Id.* at 17) Appellants further argue that even if seizure were required, the Trustee's threats and misrepresentation of his legal authority to take possession of the taxpayer mail constituted a seizure for purposes of the *ultra vires* exception to the *Barton* doctrine. (*Id*. at 14-16)

### III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3). Appellants contend that the Order is a final order because denial of the *Barton* motion conclusively and finally resolved the dispute before the Bankruptcy Court with respect to such motion and no complaint or further actions raised in the *Barton* motion are currently before the Bankruptcy Court. The Court agrees the Order is final. The Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

---

discretion. (*See* D.I. 9 at 3)

6

## IV. DISCUSSION

### A. The Third Circuit Has Not Recognized the *Ultra Vires* Exception

In *VistaCare*, a chapter 7 trustee was appointed to oversee the liquidation of an estate which consisted of a 12.2-acre parcel of land consisting of 45 lots, 44 of which were subdivided and zoned for mobile homes. *VistaCare*, 678 F.3d at 222. Lot 45 contained a retirement and assisted living facility. *See id.* The lots were subject to several restrictions, including restriction on the sale of the 44 lots to the residents of the mobile homes. *See id.* The trustee sold lot 45. *See id.* Thereafter, and notwithstanding the restrictions, the trustee sold some of the 44 lots to residents of the mobile homes. *See id.* Although the trustee obtained relief from the township to do so, the trustee did not notice the purchaser of lot 45. *See id.* at 222-23. The purchaser of lot 45 asserted that the sale of the 44 lots in derogation of the restriction was unlawful and damaged the value of his property, and therefore sought leave to sue the trustee in Pennsylvania state court. *Id.* at 223. The bankruptcy court expressed doubt as to whether leave was needed, opining that *Barton* was "antiquated and probably not controlling in the Third Circuit." *Id.* Nonetheless, the bankruptcy court performed a *Barton* analysis and granted the purchaser's motion to sue in state court. *Id.*

On appeal, the Third Circuit stated: "In sum, we hold that the *Barton* doctrine remains valid, and therefore, subject to the exception in § 959(a), a party must first obtain leave of the bankruptcy court before it brings an action in another forum against a bankruptcy trustee for acts done in the trustee's official capacity." *Id.* at 232.

In its ruling here, the Bankruptcy Court highlighted the significance of this recent guidance from the Third Circuit in addressing Appellants' request for relief:

> Important to me in addressing the United Tax matter is that the Third Circuit expressly and explicitly recognizes only one exception to the Barton Doctrine; namely, the [§] 959 [business] exception . . . In Vista Care, the Third Circuit does not specifically discuss an ultra vires exception, and it certainly does not in any way define the contours of such an exception.

(12/28/17 Hr'g Tr. at 5:8-14) The Court agrees with the Bankruptcy Court's reading of *VistaCare*.

7

As Appellants cite no Third Circuit authority addressing the *ultra vires* exception, and the Third Circuit has not recognized it, the Bankruptcy Court was not required to undertake the *ultra vires* analysis at all.

      **B.    Even if the Third Circuit Recognized the *Ultra Vires* Exception, the Bankruptcy Court's Interpretation Is Well Supported by Case Law**

"In an attempt to understand [the *ultra vires* exception]" asserted by Appellants, "which to me is not plain on its face," the Bankruptcy Court reviewed *Barton* (*see id*. at 5:19-8:11), the two circuit cases cited by most courts in discussing the exception (*id*. at 8:12-12:21), and other cases cited by Appellants (*id.* at 11:8-14:10). On appeal, Appellants argue that "wrongful possession" of the mail, standing alone, falls within the scope of the *ultra vires* exception. In discussing cases applying the exception, the Bankruptcy Court observed that they all involved seizure, *i.e.*, the taking of possession by force.[3] Based on its review of the cited cases, and in absence of clear authority on the issues, the Bankruptcy Court concluded that, to the extent there is an *ultra vires* exception to the *Barton* doctrine, it has over time, been limited to instances in which the trustee wrongfully seizes

---

[3] The Bankruptcy Court considered *Leonard v. Vrooman*, 383 F.2d 556 (9th Cir. 1967), a case in which the appointed receiver persuaded a local constable to unlock a building that the debtor did not own but used to store goods and equipment, then took possession of the property, posted notices, and placed his own locks on the doors. In determining that the Trustee may be sued for damages arising out of his illegal occupation of non-estate property, the circuit court stated: "It is true that the receiver trustee is charged by the bankruptcy act with gathering assets of the bankruptcy, and that his failure to act diligently in this respect could result in a claim against him. Yet this diligence in this case was misdirected and should have been exercised in ways other than forcible entry and retention of possession." *Id*. Discussing *Teton Millwork,* the receiver appointed to recover and collect assets in a divorce proceeding discovered that the husband owned a 25% interest in a corporation and proceeded to seize the corporation's assets, including proprietary information and mail. There, the receiver falsely represented that he had legal authority to seize the corporation's assets and provided incomplete and misleading documents relating to his authority. The Bankruptcy Court noted that while it is unclear from the opinion exactly how the receiver seized the corporation's property, it was still clear that the *ultra vires* act in that case was a seizure of property. (*Id*. at 11:4-7) Finally, the Bankruptcy Court reviewed *In re Happy Hocker Pawn Shop, Inc.*, 212 Fed. App'x 811 (11th Cir. 2006), a case in which "the action that was allowed to proceed in state court was one in which the trustee took possession of a nondebtor's business by changing the locks" . . . "[o]nce again, this is forcible trespass." (*Id*. at 12:18-21)

8

non-estate property. (*Id.* at 14:12-17)

The Bankruptcy Court noted it was not alone in reaching this conclusion and quoted, at length, the analysis set forth in the *DMW Marine* case. (*See* 12/28/17 Hr'g Tr. at 13:4-14:10 (quoting *DMW Marine,* 509 B.R at 507-08). The bankruptcy court in *DMW Marine* stated:

> Over the years, courts have curtailed the scope of the "ultra vires" exception to the *Barton* Doctrine. While no court has said as much definitively, it may be no exaggeration to state that the exception applies only in cases in which a receiver wrongfully seizes or controls non-receivership property.
> . . .
> The apparent disfavor with which courts have viewed the "ultra vires" exception seems to be based on a second rationale for the *Barton* doctrine that has developed: a common law interest in protecting trustees and receivers from claims that they are personally liable for their official actions.
> . . .
> Courts also have reasoned that permitting damages actions against receivers, whether ultimately satisfied out of the assets of the estate or out of the trustee's pockets, may affect the administration of the estate . . .
> . . .
> The Third Circuit in *VistaCare Group* endorsed much of this reasoning. As a trial court, it is appropriate for the bankruptcy court to follow *Vista Care Group* on the issue.

*Id.* at 507 (citations and quotations omitted). The bankruptcy court further stated:

> After taking into account the reasoning in *VistaCare Group*, as well as what I perceive as the trend in the case law, I consider it more likely than not that, when faced squarely with the issue, the Court of Appeals will hold that damage actions against a receiver are subject to the *Barton* doctrine, even if the damage action is based on the theory that the receiver exceeded his or her authority, unless the conduct at issue involved the seizure of non-receivership property.

*Id.* at 508 n.17. The Bankruptcy Court concluded that "to the extent that the Third Circuit would recognize the *ultra vires* exception, [it] would limit the exception to the seizure of property in the possession of a third party. And by seizure, I mean the taking of possession by force." (12/28/17 Hr'g Tr. at 12:22-13)

Appellants argue that the Bankruptcy Court erred in determining that, under *Barton* and subsequent case law, a forcible taking or seizure is required for the *ultra vires* exception to apply. (*See* D.I. 9 at 10-14) Appellants contend that the cases cited by the Bankruptcy Court impose no

9

requirement of seizure; that the proper analysis focuses only on whether a receiver exceeded his or her authority; and that the *ultra vires* exception may apply when a receiver mistakenly takes or retains the property of another. (*See id.* at 10-14) However, Appellants' arguments rest on factually distinguishable cases from outside of this circuit and unreported cases.

The Court agrees with *DMW Marine* that, as a trial court, it was appropriate for the Bankruptcy Court to follow the reasoning set forth in *VistaCare*, even though that case did not address the *ultra vires* exception.[4] While the Third Circuit's commentary, recognizing only the § 959(a) business exception to the *Barton* doctrine, was *dictum*, *dictum* in a decision of the Court of Appeals is entitled to deference and is not to be disregarded lightly. *See Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003). In absence of other clear authority, the Third Circuit's interpretation of the *Barton* doctrine, and particularly of the policies underlying the doctrine, supports the Bankruptcy Court's conclusion that, to the extent the Third Circuit would even recognize the *ultra vires* exception, it would be limited to seizure of non-estate property.

### C. Findings of Fact Are Not Clearly Erroneous

Appellants further argue that, even if a forcible taking or seizure were required to establish the *ultra vires* exception, the Trustee's actions with respect to the mail satisfy that standard. According to Appellants, the Trustee used "coercion and a wrongful assertion of legal authority" to obtain possession of the mail, and this amounts to a seizure. (D.I. 9 at 10) Conversely, the Trustee argues that the Bankruptcy Court held an evidentiary hearing and made specific factual findings supporting its conclusion that there was no seizure. The Trustee argues that Appellants have not pointed to any alleged error in the Bankruptcy Court's findings of fact. (D.I. 10 at 13)

---

[4] *VistaCare* addressed whether the *Barton* doctrine even applied to bankruptcy trustees, and if so, whether the bankruptcy court abused its discretion in permitting the plaintiff to proceed in state court. *See VistaCare*, 678 F.3d at 227.

This Court reviews the Bankruptcy Court's factual findings for clear error. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 563, 573-74 (1985). Moreover, because the findings of fact were based upon determinations related to the credibility of witnesses, this Court is obligated to give even greater deference to the Bankruptcy Court's factual determinations. *See id.* Based on the witnesses' testimony, the Bankruptcy Court found that in accordance with his standard practice in corporate chapter 7 cases, the Trustee sent a change-of-address form to the United States Postal Service requesting that mail addressed to the Debtor at the Debtor's address be redirected to him. (*Id*. at 16:4-9) The Trustee did not take any mail with him the day of the visit but instructed that all accumulated mail in SWZ's possession be sent to him. (*Id.* at 18:9-12) After communications between Mr. Sabella and SWZ, Mr. Zentner, another principal of SWZ, made the decision to comply with the Trustee's demands, and SWZ sent the mail to the Trustee. (*Id.* at 18:9-18:20) In further communications, Mr. Sabella wrote to the Trustee stating that SWZ had received debtor mail with notations on the envelope indicating that it could not be forwarded. Mr. Sabella offered to send the mail to the Trustee and suggested contacting the post office regarding further deliveries and forwarding of the Debtor's mail. (*Id.* at 18:21-19:1) Thereafter, the Trustee sent the post office a second change-of-address form with respect to the Debtor's mail. (*Id.* at 19:1-3) Two years later, the Trustee picked up 161 boxes of documents from the Debtor's office with SWZ's consent. (*Id.* at 19:4-19:5) Based on these findings, the Bankruptcy Court concluded that:

> [W]hile there were various ways in which Mr. Miller came into possession of the mail, none of these ways were by a seizure. Mr. Miller came into possession of the debtor's mail through a change-of-address form. The mail was addressed to the debtor at a lease that was in existence on the date of the filing of the petition, as shown on Schedule G. That lease did not expire until December 31, 2014. Further, Mr. Miller testified that submitting a change-of-address form to the postal service was part of his expected duties as a trustee and part of an audit checklist for chapter 7 trustees. Further, SWZ clearly consented to the change of address by virtue of their March 25, 2014 e-mail.
> . . .
> Mr. Miller also came into possession of mail in 2016 when he was invited to pick up the 161 boxes of the debtor's files. This is not a seizure either.
> . . .

11

> Finally, Mr. Miller came into possession of mail because Mr. Sabella directed his assistants to box the mail and send it to Mr. Miller. Mr. Sabella was acting as SWZ in that regard. SWZ had time between Mr. Miller's visit to consider whether to comply with Mr. Miller's demands, and Mr. Zentner made a business decision that SWZ was better off complying with the demand than not. SWZ also determined not to raise the issue with the Court.
>
> . . .
>
> Mr. Sabella argues that he felt compelled to comply with Mr. Miller's request and/or that Mr. Miller's statements were meant to intimidate him. My observation of Mr. Sabella on the stand, both at the hearing on this motion and previously, is that Mr. Sabella is not easily intimidated. And he did not testify that he was actually intimidated. Rather, I believe that SWZ did exactly what Mr. Sabella testified it did. It considered its options and made a calculated determination that it was better to comply with Mr. Miller's demands in the hopes of avoiding litigation. When the litigation ensued, SWZ decided then to raise the mail issue in response. This conduct does not amount to a seizure, much less a forcible seizure. Mr. Miller did not lockdown SWZ's offices or even the debtor's offices. And he did not take any mail out the door with him, except with the consent of SWZ.

(12/28/17 Hr'g. Tr. at 19:5-20:25) These findings support the Bankruptcy Court's conclusion that none of the three ways in which the Trustee came into possession of the Debtor's mail (by redirection via the post office, by picking up same at SWZ's invitation, or by SWZ voluntarily sending the Trustee the mail) constituted a seizure of the mail by force that would fall within the *ultra vires* exception to the *Barton* doctrine (*id*. at 19:9-20:25).

The Court finds no error in the Bankruptcy Court's conclusions that the *ultra vires* exception to the *Barton* doctrine has not been recognized by the Third Circuit, and that, to the extent that the Third Circuit would even recognize it, the exception would not apply in this situation based on the Third Circuit's opinion in *VistaCare*. As no exception to the *Barton* doctrine applies, the Bankruptcy Court was correct in requiring Appellants to seek leave from the Bankruptcy Court before filing an action against the Trustee in another forum.

## V. CONCLUSION

For the foregoing reasons, the Court will affirm the Order. An appropriate Order follows.

_____/s/_____
March 7, 2018  HON. LEONARD P. STARK
Wilmington, Delaware  UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: UNITED TAX GROUP, LLC, | : | Chapter 7 |
| | : | |
| Debtors. | : | Bankr. Case No. 14-10486-LSS |
| _____ | : | |
| SWZ FINANCIAL II, LLC, and TAX HELP MD, INC., | : | |
| | : | |
| Appellants, | : | Civ. No. 18-93-LPS |
| | : | |
| v. | : | |
| | : | |
| GEORGE L. MILLER, Chapter 7 Trustee, | : | |
| | : | |
| Appellee. | : | |

## **ORDER**

At Wilmington, this 7th day of March, 2018, for the reasons set forth in the accompanying Memorandum issued this same date;

IT IS HEREBY ORDERED that:

1. The Bankruptcy Court's Order (B.D.I. 162, 172) is AFFIRMED.

2. The hearing previously scheduled for March 8, 2018 is cancelled.

3. The Clerk of the Court is directed to CLOSE Civ. No. 18-93-LPS.

                                                      _____/s/_____
                                                      HONORABLE LEONARD P. STARK
                                                      UNITED STATES DISTRICT JUDGE